## RUDY'S LIMOUSINE SERVICE, INC. *v.* DEPARTMENT OF TRANSPORTATION ET AL.
### (AC 23013)

Lavery, C. J., and Schaller and Peters, Js.

Argued March 18—officially released July 15, 2003

*John J. Morgan*, with whom, on the brief, were *Albert J. Barr* and *Douglas R. Penn*, for the appellant (plaintiff).

*Charles A. Walsh*, assistant attorney general, with whom, on the brief, was *Richard Blumenthal*, attorney general, and for the appellees (defendants).

*Opinion*

PETERS, J. Anyone who wants to operate a vehicle in livery service in Connecticut must first obtain a permit from the department of transportation. In deciding whether to grant an application for such a permit, the Connecticut department of transportation (department) must decide whether the proposed service will improve "public convenience and necessity." General Statutes § 13b-103 (b). The principal issue in this appeal is whether this standard provides the department with sufficient guidance to satisfy the principle of separation of powers mandated by the Connecticut constitution. A secondary issue is whether the department properly applied this standard under the circumstances of this case. Without addressing the constitutional issue, the trial court concluded that the department had applied the standard properly. Accordingly, the court dismissed the applicant's appeal. Although we find it prudent to resolve the constitutional issue, we affirm the judgment of the trial court.

On July 26, 2000, the plaintiff, Rudy's Limousine Service, Inc., filed an application with the defendant department for authorization to operate sixty-one additional

livery vehicles intrastate.[1] On May 18, 2001, after public hearings, the department granted the plaintiff's application in part, permitting the operation of five additional vehicles intrastate, rather than the requested sixty-one. The department concluded that the "maximum amount of vehicles that would improve the public's convenience and necessity . . . would be five."

In the plaintiff's appeal to the trial court, it claimed that (1) § 13b-103 (b) lacks the constitutionally required standards to guide the department in making determinations about permits to operate livery vehicles, and (2) the department improperly applied the "public convenience and necessity" standard to the plaintiff's application. The court declined to address the plaintiff's facial constitutional challenge of § 13b-103 (b) on the ground that a party who has sought a benefit under a particular statute cannot subsequently challenge that statute's validity in the same proceeding. On the merits, the court concluded that the department had properly applied the standards set forth in § 13b-103 (b). The plaintiff has appealed.

The record discloses the following undisputed facts. The plaintiff is a livery operation with headquarters in Greenwich. Its business has grown steadily and, at the time of the department's decision, was worth approximately $15.6 million. It operates a fleet of ninety vehicles, which are used primarily for interstate trips to transport passengers to places such as casinos, airports, dances and corporate headquarters. At the time of the plaintiff's application, twenty-six of its vehicles were licensed to provide intrastate services.

On appeal, the plaintiff challenges the judgment of the trial court on three grounds.[2] It claims that (1) § 13b-

[1] The other defendants named in this action are Laila Mandour, who was the hearing officer, and Richard Blumenthal, attorney general.

[2] The plaintiff does not challenge any of the factual determinations of the department or the trial court. Additionally, the plaintiff does not contest the judgment of the court, *Cohn, J.,* granting the department's motion to

103 (b) is an unconstitutional delegation of power because the statute does not contain a clear legislative principle to guide the department in addressing applications for intrastate livery vehicle permits, (2) the trial court applied an improper standard of review in adjudicating its administrative appeal and (3) the department improperly applied the standards delineated in § 13b-103 (b) in the circumstances of this case. The department asks us to affirm the court's judgment in all respects.

Because, at this juncture, each of the plaintiff's claims raises issues of law, our review is plenary. *Johnson Electric Co.* v. *Salce Contracting Associates, Inc.*, 72 Conn. App. 342, 344, 805 A.2d 735, cert. denied, 262 Conn. 922, 812 A.2d 864 (2002); see also *Wagner* v. *Clark Equipment Co.*, 259 Conn. 114, 122, 788 A.2d 83 (2002).

I

The plaintiff first claims that the limitations contained in § 13b-103 (b) are unenforceable because the statute lacks constitutionally required standards. In so doing, the plaintiff maintains that the trial court improperly declined to consider this claim on its merits.

The plaintiff contends that the trial court improperly ruled that the plaintiff could not raise a facial constitutional challenge of § 13b-103 (b) in an administrative appeal under the Uniform Administrative Procedure Act (UAPA), General Statutes § 4-166 et seq. The court stated that "[i]t is settled law that a party who has sought relief under a statute or ordinance may not challenge its constitutionality in the same proceeding. See *Carofano* v. *Bridgeport*, 196 Conn. 623, 628, 495 A.2d 1011 (1985); *J & M Realty Co.* v. *Norwalk*, 156 Conn. 185, 191, 239

strike the second count of the plaintiff's complaint seeking a declaratory judgment as to the validity of § 13b-103 (b).

A.2d 534 (1968)."[3] Because of cases decided after those on which the court relied, we disagree with its holding. In our view, the plaintiff's facial constitutional claim was properly before the court in this case.

Under the UAPA, a party may appeal from the decision of an agency to the Superior Court. The court is required to affirm the decision of the agency "unless the court finds that substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions or decisions are: (1) In violation of constitutional or statutory provisions . . . ." General Statutes § 4-183 (j).[4] A party may also file a declaratory judgment action with the agency "as to the validity of any regulation, or the applicability to specified circumstances of a provision of the general statutes, a regulation, or a final decision on a matter

[3] The cases cited by the trial court do not involve administrative appeals brought under the UAPA. In *Carofano*, the plaintiff police officers sought an injunction challenging the defendant municipality's ordinance requiring all police officers to live within the city limits. *Carofano* v. *Bridgeport*, supra, 196 Conn. 625–26. On appeal, the plaintiffs challenged the constitutionality of General Statutes § 7-473c, the "mandatory binding arbitration" statute that governs disputes between municipalities and representatives of their employees over collective bargaining agreements. Id. In *J & M Realty Co.*, the plaintiff appealed from the disapproval of its subdivision application by the Norwalk common council. The plaintiff challenged the validity of the relevant municipal regulations on the ground that they were impermissible delegations of power. *J & M Realty Co.* v. *Norwalk*, supra, 156 Conn. 187.

[4] General Statutes § 4-183 (j) provides: "The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court shall affirm the decision of the agency unless the court finds that substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (1) *In violation of constitutional or statutory provisions*; (2) in excess of the statutory authority of the agency; (3) made upon unlawful procedure; (4) affected by other error of law; (5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. If the court finds such prejudice, it shall sustain the appeal and, if appropriate, may render a judgment under subsection (k) of this section or remand the case for further proceedings. For purposes of this section, a remand is a final judgment." (Emphasis added.)

within the jurisdiction of the agency." General Statutes § 4-176 (a).[5] After a ruling by the agency, or a decision by the agency not to issue a ruling, the party may then file a declaratory judgment action with the trial court. General Statutes § 4-175 (a).[6]

We have not found, nor have the parties cited, any cases under the UAPA that directly address whether a party may raise facial challenges to a statute's validity in an administrative appeal. Our Supreme Court, however, has discussed the rule governing the adjudication of constitutional issues raised in administrative appeals that do not fall under the UAPA.

For many years, Connecticut courts have held that a person cannot seek a benefit under a particular statute and then, in the same proceeding, challenge the statute's constitutionality. See, e.g., *Florentine* v. *Darien*, 142 Conn. 415, 428, 115 A.2d 328 (1955), cited in *Carofano* v. *Bridgeport*, supra, 196 Conn. 628.

*Cioffoletti* v. *Planning & Zoning Commission*, 209 Conn. 544, 552 A.2d 796 (1989), advised litigants to pursue a claim of facial unconstitutionality by way of

[5] General Statutes § 4-176 (a) provides: "Any person may petition an agency, or an agency may on its own motion initiate a proceeding, for a declaratory ruling as to the validity of any regulation, or the applicability to specified circumstances of a provision of the general statutes, a regulation, or a final decision on a matter within the jurisdiction of the agency."

[6] General Statutes § 4-175 (a) provides in relevant part: "If a provision of the general statutes, a regulation or a final decision, or its threatened application, interferes with or impairs, or threatens to interfere with or impair, the legal rights or privileges of the plaintiff and if an agency (1) does not take an action required by subdivision (1), (2) or (3) of subsection (e) of section 4-176, within sixty days of the filing of a petition for a declaratory ruling, (2) decides not to issue a declaratory ruling under subdivision (4) or (5) of subsection (e) of said section 4-176, or (3) is deemed to have decided not to issue a declaratory ruling under subsection (i) of said section 4-176, the petitioner may seek in the Superior Court a declaratory judgment as to the validity of the regulation in question or the applicability of the provision of the general statutes, the regulation or the final decision in question to specified circumstances. . . ."

a declaratory judgment action rather than by an appeal from the denial of an application under the applicable land use regulations. Id., 563. It reasoned that the determination of the validity of a statute was a matter of interest not only to the litigant but also to other persons who might be affected by the statute.[7] Id.

In *Stafford Higgins Industries, Inc.* v. *Norwalk*, 245 Conn. 551, 715 A.2d 46 (1998), a tax appeal raised under General Statutes § 12-119, the Supreme Court overruled *Cioffoletti*. The court held that, in an administrative appeal from a contested administrative decision, the appellant *could* raise a facial constitutional challenge to the underlying statute. The court stated that the dispositive issue was whether third parties would be so affected by the tax assessment that they needed the kind of notice provided by a declaratory judgment action. The court concluded that, in that case, they did not need such notice. Id., 576. The court expressly overturned "the *Cioffoletti* rule requiring that facial attacks on the validity of legislation be brought in the form of declaratory judgment actions instead of administrative appeals." Id., 582.

The court based its conclusion on three reasons. It first held that *Florentine* and its progeny did not support the *Cioffoletti* rule because none of them had held that a declaratory judgment action was the exclusive procedural vehicle for a challenge to the constitutionality of

---

[7] It is worth noting that the court, in *Cioffoletti*, did not preclude review of the plaintiffs' constitutional claim, despite the plaintiffs' failure to file a declaratory action. In that case, the plaintiffs had claimed that the commission's decision not to grant the plaintiffs' application for an excavation permit constituted a taking without just compensation in violation of the fifth amendment to the United States constitution. *Cioffoletti* v. *Planning & Zoning Commission*, supra, 209 Conn. 546. Although recognizing the principal articulated in *Florentine*, the court concluded that the legislature, in enacting General Statutes § 22a-43a (a), carved out a specific exception to takings claims brought against an agency carrying out the Inland Wetlands and Watercourses Act, General Statutes §§ 22a-36 through 22a-45. *Cioffoletti* v. *Planning & Zoning Commission*, supra, 550–51.

a particular statute. Id., 579–80. Second, the court noted that it had previously permitted challenges to the constitutionality of a statute through actions other than declaratory judgment actions. Id., 580–81. Finally, the court decided that the concern for third party interests did not outweigh the legislature's decision to authorize statutory appeals as an avenue for relief. Id., 581–82.

*Stafford Higgins Industries, Inc.*, casts great doubt on the principle that it is improper simultaneously to seek a benefit under a particular legislation and to challenge the validity of that legislation in the same proceeding. Like *Stafford Higgins Industries, Inc.*, this case does not place third party interests in jeopardy. *Stafford Higgins Industries, Inc.*, is reinforced by *Rayhall* v. *Akim Co.*, 263 Conn. 328, 819 A.2d 803 (2003), in which the Supreme Court held that even though the workers' compensation review board lacked jurisdiction to consider constitutional issues, a reviewing court had such jurisdiction. Id., 337–41.

We recognize that, unlike *Stafford Higgins Industries, Inc.*, the present case involves an administrative appeal under § 4-183 (j) rather than a statutory appeal under § 12-119. Similarly, this case is not an appeal from the workers' compensation review board. We have, however, relied on cases arising in the context of appeals from other kinds of boards to decide the proper scope of UAPA appeals. See *Mohican Valley Concrete Corp.* v. *Zoning Board of Appeals*, 75 Conn. App. 45, 51, 815 A.2d 145 (2003).

*Stafford Higgins Industries, Inc.*, and *Rayhall* strongly suggest that our older cases denying a litigant the opportunity to raise a facial constitutional challenge to a statute under which that litigant sought a benefit are no longer good law. We conclude, therefore, that the plaintiff's facial constitutional challenge to § 13b-103 (b) is properly before us.

## II

We turn now to the merits of the plaintiff's facial constitutional claim. The plaintiff claims that § 13b-103 (b) is unenforceable because it is an unconstitutional delegation of legislative power in violation of the constitution of Connecticut, art. II and art. III, § 1.[8] The plaintiff contends that § 13b-103 (b) violates constitutional principles of separation of powers because the statute does not provide any primary standards or intelligible principles to guide the department in its consideration of applications such as the one in this case.

"[I]n passing upon the constitutionality of a legislative act, we will make every presumption and intendment in favor of its validity . . . . The party challenging a statute's constitutionality has a heavy burden of proof; the unconstitutionality must be proven beyond all reasonable doubt." (Citations omitted; internal quotation marks omitted.) *Bottone* v. *Westport*, 209 Conn. 652, 657, 553 A.2d 576 (1989).

"The law-making power is in the legislative branch of our government and cannot constitutionally be delegated . . . but the General Assembly may carry out its legislative policies within the police power of the state by delegating to an administrative agency the power to fill in the details. . . . In order to render admissible such delegation of legislative power, however, it is necessary that the statute declare a legislative policy, establish primary standards for carrying it out, or lay down an intelligible principle to which the administrative officer or body must conform." (Citations omitted; internal quotation marks omitted.) *New Milford* v. *SCA Services of Connecticut, Inc.*, 174 Conn. 146, 149, 384 A.2d 337 (1977). "Where a statute . . . vests public officials with

---

[8] Although the plaintiff also argued in its brief that § 13b-103 (b) was unconstitutionally vague in violation of the fourteenth amendment to the United States constitution, it abandoned this claim at oral argument.

the discretion to grant, refuse or revoke a license to carry on an ordinarily lawful business, and does not set an express standard to guide and govern the exercise of this discretion, the attempted delegation of power is a nullity." Id., 151.

Under § 13b-103 (a) (1), to decide whether to issue a livery service permit, the department must determine "the nature and extent of the service to be rendered" and must certify "that public convenience and necessity will be improved by the operation and conduct of such livery service. . . ." General Statutes § 13b-103 (a) (1).[9] Section 13b-103 (b) instructs the department to "take into consideration the present or future public convenience and necessity for the service the applicant proposes to render, the suitability of the applicant or the suitability of the management if the applicant is a limited liability company or corporation, the financial responsibility of the applicant, the ability of the applicant efficiently and properly to perform the service for which authority is requested and the fitness, willingness and ability of the applicant to conform to the provisions of this chapter and the requirements and regulations of the department under this chapter." General Statutes § 13b-103 (b).

The plaintiff argues that the "public convenience and necessity" standard lacks the certainty required to pass constitutional muster. This absence of certainty, according to the plaintiff, makes the department's decisions arbitrary. We disagree.

"The test for constitutionally sufficient standards to govern the exercise of delegated powers requires only

---

[9] General Statutes § 13b-103 (a) (1) provides in relevant part: "No person, association, limited liability company or corporation shall operate a motor vehicle in livery service until such person, association, limited liability company or corporation has obtained a permit from the Department of Transportation, specifying the nature and extent of the service to be rendered and *certifying that public convenience and necessity will be improved by the operation and conduct of such livery service. . . .*" (Emphasis added.)

that the standards be as definit[e] as is reasonably practicable under the circumstances." (Internal quotation marks omitted.) *State* v. *Campbell*, 224 Conn. 168, 180, 617 A.2d 889 (1992), cert. denied, 508 U.S. 919, 113 S. Ct. 2365, 124 L. Ed. 2d 271 (1993). "[T]he legislative process would frequently bog down if the General Assembly were constitutionally required to appraise beforehand the myriad situations to which it wishes a particular policy to be applied . . . . To require any more specificity in the standards . . . would hamper the flexibility needed [for the department to carry out its duties]." (Citations omitted; internal quotation marks omitted.) *University of Connecticut Chapter, AAUP* v. *Governor*, 200 Conn. 386, 398–99, 512 A.2d 152 (1986).

Applying that test in this case, we conclude that the criteria set out in § 13b-103 (b) are constitutionally sufficient. The statute directs the department to consider specified factors in its determination of whether to issue livery vehicle permits. These factors focus on the financial status and operational capabilities of the applicant and the public need for the service proposed by the applicant. The constitution does not require a statute to stipulate the exact number of livery permits that would meet the public need and an applicant's capacity for livery service.

Our decision comports with the balance that our Supreme Court has struck between preserving an agency's flexibility in carrying out its duties and the constitutional mandate of reasonable specificity. See id. (upholding statute allowing governor to reduce budgetary allotments when there was "a change of circumstances" or when governor "deems necessary"); see also *Cioffoletti* v. *Planning & Zoning Commission*, supra, 209 Conn. 560–61 (recognizing that term "necessary" is used in many legal settings). The court likewise has upheld the constitutional validity of a statute containing a standard similar to that contained in § 13b-

103 (b) that empowered an agency to apply the standard of "public convenience and necessity." See *Wilson Point Property Owners Assn.* v. *Connecticut Light & Power Co.*, 145 Conn. 243, 267–68, 140 A.2d 874 (1958); *Jennings* v. *Connecticut Light & Power Co.*, 140 Conn. 650, 670–71, 103 A.2d 535 (1954).

For a contrary point of view, the plaintiff cites *Mitchell* v. *King*, 169 Conn. 140, 363 A.2d 68 (1975). In that case, the Supreme Court held that General Statutes (Rev. to 1975) § 10-234 had unconstitutionally authorized the defendant, a board of education, to expel disruptive students. *Mitchell* v. *King*, supra, 144–45. The statute provided that "[t]he board of education of any town may expel from school any pupil . . . who after a full hearing is found guilty of conduct inimical to the best interests of the school." Id., 141 n.1. The court concluded that the meaning of "inimical to the best interests" was "virtually unlimited" and did not sufficiently guard against arbitrary agency action. Id., 144.

In our view, *Mitchell* is distinguishable. The standard in § 13b-103 (b) is "public convenience and necessity," a standard that permits an applicant to provide relevant factual data in support of a permit application. The standard in § 13b-103 (b) is in the nature of a moving target reflecting changing commercial circumstances. In addition, the holding in *Mitchell* was premised on the proposition that the statute was void for vagueness, not that it embodied an unconstitutional delegation of authority. Id., 144–45. Cases subsequent to *Mitchell* have characterized it in this way. See, e.g., *State* v. *Jason B.*, 248 Conn. 543, 556, 729 A.2d 760, cert. denied, 528 U.S. 967, 120 S. Ct. 406, 145 L. Ed. 2d 316 (1999); *Packer* v. *Board of Education*, 246 Conn. 89, 115, 717 A.2d 117 (1998).

We conclude that § 13b-103 (b) provides the department with sufficient guidance to grant or to deny permit applications against the myriad of factual scenarios that

may arise. The statute therefore is not an unconstitutional delegation in violation of the constitutional doctrine of separation of powers.

### III

The plaintiff also claims that the trial court employed an improper standard in reviewing the department's decision. In addressing the department's interpretation of § 13b-103 (b), the court stated that it "gives deference to the construction of a statute applied by the administrative agency empowered by law to carry out the statute's purpose. *MacDermid, Inc.* v. *Dept. of Environmental Protection*, [257 Conn. 128, 138, 778 A.2d 7 (2001)]."

*MacDermid, Inc.*, held that the scope of judicial review of an administrative agency's action under the UAPA is "very restricted." Id., 136. The substantial evidence rule that governs UAPA appeals is satisfied "if the administrative record affords a substantial basis of fact from which the fact in issue can be reasonably inferred. . . . This substantial evidence standard is highly deferential and permits less judicial scrutiny than a clearly erroneous or weight of the evidence standard of review. . . . Even as to questions of law, [t]he court's ultimate duty is only to decide whether, in light of the evidence, the [agency] has acted unreasonably, arbitrarily, illegally, or in abuse of its discretion." (Citations omitted; internal quotation marks omitted.) Id., 137. Only administrative determinations of novel questions of law are excluded from the principle of special deference. Id.; see also *Hartford* v. *Hartford Municipal Employees Assn.*, 259 Conn. 251, 260–63, 788 A.2d 60 (2002).

The plaintiff argues that the trial court's decision in this case was too deferential because the court failed to recognize that the questions presented by its application were purely questions of law. The plaintiff is mistaken.

In the proceedings before the department, the plaintiff's application presented questions both of fact and of law. The department was required to make extensive findings of fact about the plaintiff's capabilities to operate a livery service and the public need for the service proposed by the plaintiff's application. The department then had to apply to those facts the factors delineated in § 13b-103 (b). *MacDermid, Inc.*, holds that when an agency must make a case-by-case determination of matters that fall within the department's expertise, a deferential standard of review is proper even if the particular legal issue is a novel one. *MacDermid, Inc.* v. *Dept. of Environmental Protection*, supra, 257 Conn. 139. As was the case in *MacDermid, Inc.*, the plaintiff's application required a "technical, case-by-case review . . . that is precisely the type of situation that calls for agency expertise." (Citation omitted; internal quotation marks omitted.) Id.

For a contrary precedent, the plaintiff relies on *Connecticut Light & Power Co.* v. *Texas-Ohio Power, Inc.*, 243 Conn. 635, 708 A.2d 202 (1998). That case is distinguishable. In *Texas-Ohio Power, Inc.*, the plaintiff sought a declaratory ruling from the department of public utility control about the retail sale of electricity by the defendant. Id., 639–40. There were no disputed facts. Id., 643. Because the only questions raised by the plaintiff were questions of law challenging the agency's interpretation of the applicable statutes, the court held that deferential review was unwarranted. Id., 643–44.

Unlike *Texas-Ohio Power, Inc.*, this case required administrative evaluation of the plaintiff's application with respect to mixed questions of law and fact. We conclude, therefore, that the trial court employed the proper method of analysis in its review of the plaintiff's claims of administrative error.

## IV

The plaintiff's final claim is that the trial court improperly concurred in the department's interpretation of § 13b-103. In its view, it was entitled to more than five additional intrastate vehicle permits because (1) the department improperly construed the statute to require an applicant to satisfy all five criteria enumerated in § 13b-103 (b) and (2) the department improperly applied the "public convenience and necessity" factor because it failed to articulate a definitive standard for that determination. Both claims are unpersuasive.

"We follow the method of statutory interpretation recently articulated in *State* v. *Courchesne*, 262 Conn. 537, 816 A.2d 562 (2003). The process of statutory interpretation involves a reasoned search for the intention of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. In seeking to determine that meaning, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter. . . . Thus, this process requires us to consider all relevant sources of the meaning of the language at issue, without having to cross any threshold or thresholds of ambiguity. Thus, we do not follow the plain meaning rule." (Internal quotation marks omitted.) *Nastro* v. *D'Onofrio*, 76 Conn. App. 814, 821, 822 A.2d 286 (2003), quoting *State* v. *Courchesne*, supra, 577.

"[I]t is the well established practice of this court to accord great deference to the construction given [a] statute by the agency charged with its enforcement. . . . When an agency has expertise in a given area and

a history of determining factual and legal questions similar to those at issue, its interpretation is granted deference by the courts." (Citations omitted; internal quotation marks omitted.) *MacDermid, Inc.* v. *Dept. of Environmental Protection*, supra, 257 Conn. 138–39.

We agree with the trial court that the department reasonably interpreted § 13b-103 (b) to require an applicant to satisfy all of the factors enumerated therein. Textually, the factors enumerated in the statute are separated by the conjunction "and" as opposed to the conjunction "or." In addition, § 13b-103 (a) (1) expressly requires the department, in the absence of certain exceptions,[10] to certify "that public convenience and necessity will be improved by the operation and conduct of such livery service. . . ." The plaintiff has not cited any legislative history to support its narrower reading of § 13b-103 (b). Finally, it has not suggested why, as a matter of policy, the legislature would have intended to limit the department's consideration to only one of the statutory factors.

We also agree with the court that the department properly applied the "public convenience and necessity" factor in this case. The department reviewed the plaintiff's trip sheets for a five day period selected by the plaintiff, heard testimony from individuals associated with the plaintiff's business and reviewed letters from former clients. In light of this evidence, the department reasonably determined that, although the plaintiff's *interstate* business had grown over the years, its *intrastate* business had not.

The department's interpretation of "public convenience and necessity" centered on the usage of the plaintiff's vehicles for intrastate trips. The department explained that it relied primarily on the plaintiff's own

---

[10] None of these exceptions is applicable to the present case. See General Statutes § 13b-103 (a) (2) through (4).

trip records so as "to ensure that the [plaintiff] is using its intrastate fleet for such intrastate service and that these vehicles are being used to their fullest extent, thereby showing that the present and future public convenience and necessity will be improved by a grant of additional authority."

This reading of the statute comports with a decision of our Supreme Court interpreting the same statutory language in General Statutes (1958 Rev.) § 16-283, now § 13b-389. That statute, like § 13b-103 (a) (1), requires a new common carrier to obtain a certificate of "public convenience and necessity." In *Briggs Corp.* v. *Public Utilities Commission*, 148 Conn. 678, 174 A.2d 529 (1961), the Supreme Court interpreted that phrase to mean that "the benefits to be derived from the operation [of the motor vehicle] will not be limited to a few persons in a particular locality. It means benefit to the public generally, and, in the determination of public convenience and necessity, the effect of the commissioner's action upon the whole public instead of a small part of it must be considered." Id., 682; see also *Wilson Point Property Owners Assn.* v. *Connecticut Light & Power Co.*, supra, 145 Conn. 261 (considering General Statutes [1949 Rev.] § 5646, now § 16-235, governing utility structures, "public convenience and necessity" refers to immediate public need).

The plaintiff asserts, however, that the trial court should have held that the department improperly limited its assessment of the plaintiff's business and the public need for the service proposed. In the plaintiff's view, it was impermissible to examine trip records for only five days, even though the plaintiff chose the particular five days. The proper inquiry, the plaintiff argues, should focus on periods of peak demand. Presumably, the plaintiff thinks that no one five day period demonstrates peak demand livery usage. The department, however, was not required to agree with the plaintiff's

insistence that peak demand usage was the proper measure of public usage.

We conclude, therefore, that the trial court's judgment was proper both procedurally and substantively. The court employed the proper standard in reviewing the plaintiff's appeal of the department's decision. Furthermore, the court properly determined that the department had acted properly in construing § 13b-103 (b) to require a multifactor analysis and in applying the "public convenience and necessity" standard to the plaintiff's application for additional intrastate livery service.

The judgment is affirmed.

In this opinion the other judges concurred.