******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

ENRICO MANGIAFICO *v.* TOWN OF
FARMINGTON ET AL.
(AC 37620)

Alvord, Keller and Beach, Js.

*Argued January 31—officially released May 16, 2017*

(Appeal from Superior Court, judicial district of
Hartford, Scholl, J.)

*Jon L. Schoenhorn*, for the appellant (plaintiff).

*Kenneth R. Slater, Jr.*, with whom, on the brief, was
*Kelly C. McKeon* for the appellees (defendants).

*Opinion*

ALVORD, J. The plaintiff, Enrico Mangiafico, appeals from the judgment of the trial court dismissing four of the five counts in his complaint and rendering summary judgment on the remaining count. In his complaint, the plaintiff alleged that the actions of the municipal defendants, the town of Farmington (town) and five individuals[1] sued in their official capacities (individual defendants), in placing his residential property on the town's blight list, issuing citations for blight violations, imposing daily fines for blight violations and recording liens on his property for failing to pay those fines, violated his due process rights, constituted an unconstitutional taking of his property, and inflicted severe emotional distress. The plaintiff sought declaratory and injunctive relief, a discharge of the municipal blight liens, and indemnification by the town for damages caused by the individually named defendants.

On appeal, the plaintiff claims that the court improperly granted the defendants' motion to dismiss on the ground that he had failed to exhaust his administrative remedies as provided by statute and the Code of the Town of Farmington (code). Further, the plaintiff claims that the court improperly granted the defendants' motion for summary judgment on his count seeking discharge of the municipal blight liens on the ground that he could not collaterally attack the validity of the assessments underlying those liens. We affirm the judgment of the trial court.

The following facts, as either alleged in the complaint or undisputed by the parties, and procedural history are relevant to the resolution of the claims on appeal. The plaintiff's residence, located on Lakeview Drive in Farmington, suffered catastrophic damage prior to 2009, rendering it uninhabitable for a lengthy period of time. The plaintiff's insurance carrier, which directed the demolition and rebuilding of the home, caused delays outside of the plaintiff's control. He brought an action against the insurance carrier, and a settlement was reached in August, 2011. In July, 2012, a group of residents in the plaintiff's neighborhood filed a complaint with the town manager concerning the appearance of the plaintiff's property. Shortly thereafter, a town official notified the plaintiff of the complaint.

Prior to 2012, the town adopted chapter 88 of the code (blight ordinance) as one of its municipal ordinances. The provisions of chapter 88 address vacant blighted buildings that adversely affect property values within the town and that threaten the health, safety and general welfare of its residents. Section 88-4 of the blight ordinance sets forth procedures for placing properties on a blighted property list. The blight ordinance further allows the town manager, or his designee, to issue citations and to impose a penalty of not more

than $100 per day for violations of the blight ordinance. Section 88-5 of the blight ordinance and chapter 91 of the code, titled "citation hearing procedure," provide property owners with an administrative procedure for contesting liability for the blight citations and assessments.

On August 14, 2012, the town council voted to add the plaintiff's property to the town's blighted property list. No advance notice was provided to the plaintiff that such an action would be taken at that meeting. The town manager sent the plaintiff a letter on August 22, 2012, advising him that his property had been placed on the town's list of blighted properties. The letter further required the plaintiff to undertake certain improvements prior to October 1, 2012.

Commencing on September 4, 2012, the town issued citations and imposed a penalty of $100 per day against the plaintiff for his alleged violations of the blight ordinance. Pursuant to § 88-5 of the blight ordinance, on October 15, 2012, the plaintiff requested and attended a hearing to challenge his liability. At that hearing, the building citation hearing officer reduced the amount of the plaintiff's fines, for the period of September 4 through October 15, 2012, from $4000 to $2000. The hearing officer further required the plaintiff to submit a building plan to municipal officials within thirty days of the hearing. The hearing officer refused, however, to consider the plaintiff's challenges to the designation of his property as a blighted building or the procedures involved in that designation. On February 5, 2013, a $2000 municipal real estate lien was placed on the plaintiff's property for his failure to pay the assessment entered by the hearing officer on October 15, 2012.

For the period January 4 to February 19, 2013, the town imposed, on February 21, 2013, an additional $4700 in daily fines. On April 16, 2013, the town placed a second municipal real estate lien on the plaintiff's property for his failure to pay the $4700 assessed by the hearing officer on February 21, 2013. According to the plaintiff, he received no notice of the scheduled February 21, 2013 hearing nor was he given an opportunity to contest the designation of his property as blighted.

On July 2, 2013, the plaintiff attended another hearing before the same hearing officer, seeking to challenge the blight designation of his property and the fines imposed for the alleged violations of the blight ordinance. The hearing officer reiterated his position that the plaintiff could not contest the blight designation at that administrative hearing, and he sought an explanation for the plaintiff's failure to complete construction pursuant to his submitted plan. On July 10, 2013, the hearing officer sent a letter to the plaintiff requiring specified improvements and construction to be completed by September 9, 2013, in exchange for the reduc-

tion or waiver of all accrued fines. The plaintiff did not appeal from the decisions of the hearing officer to the Superior Court pursuant to § 91-2 (G) of the town's citation hearing procedure ordinance or General Statutes § 7-152c (g).[2]

The fines that remain and are at issue are those imposed from September 4 through October 15, 2012, in the reduced amount of $2000, and the fines imposed from January 1 through February 19, 2013, in the amount of $4700. On September 6, 2013, the plaintiff commenced the present action alleging that the defendants' conduct constituted a violation of his due process rights and a taking under the federal and state constitutions, and the intentional infliction of emotional distress. He sought declaratory and injunctive relief, damages, a discharge of the municipal real estate liens and indemnification by the town for the actions of the individually named defendants. On November 15, 2013, the defendants filed a motion to dismiss all five counts of the plaintiff's complaint on the ground that he failed to exhaust his administrative remedies pursuant to the code and the statutory remedy set forth in § 7-152c (g). The plaintiff filed an opposition to the motion on December 12, 2013. The court heard argument on February 10, 2014.

On May 20, 2014, the court issued its memorandum of decision dismissing four of the five counts of the plaintiff's complaint. The court concluded: "[T]he exhaustion doctrine requires not only that a party avail himself of any remedies before the administrative agency but that a party who has a statutory right to appeal from a decision of an administrative agency cannot, instead of appealing, bring an independent action to test the very issues which the appeal was designed to test. Here an appeal to the Superior Court from the decisions of the municipal hearing officer would have provided the plaintiff with a de novo hearing in which he could have contested the imposition of the fines as well as the designation of his property as blighted." The court further determined that none of the exceptions to the exhaustion doctrine applied in this case. With respect to count four, however, which sought a discharge of the municipal real estate liens, the court concluded that it had subject matter jurisdiction "to determine whether it can treat the antiblight lien as a property tax lien, and, if so, whether the antiblight lien may be discharged as such." (Internal quotation marks omitted.) Accordingly, the court denied the defendants' motion to dismiss count four of the plaintiff's complaint.[3]

On October 1, 2014, the defendants filed a motion for summary judgment on the remaining count of the plaintiff's complaint, claiming that they were entitled to judgment as a matter of law because the underlying assessments were valid and final. The defendants

argued that because the liens "were properly noticed and filed, the plaintiff cannot prevail on [count four] seeking to discharge the liens." In support of their motion, the defendants filed a memorandum of law and an affidavit by the town manager; see footnote 1 of this opinion; attesting to the procedure employed in securing and recording the liens. The plaintiff filed an objection to the defendants' motion on October 31, 2014. The court heard argument on November 17, 2014, and rendered summary judgment on count four in its memorandum of decision issued January 7, 2015. The court concluded: "Where the same claims could have been asserted in a timely appeal, the plaintiff's claims as to the invalidity of the liens are nothing more than an impermissible collateral attack on their validity." This appeal followed.

I

The plaintiff's first claim is that the court improperly dismissed four of the five counts in his complaint on the ground that he failed to exhaust his administrative remedies. Specifically, the plaintiff argues that he was not required to exhaust administrative remedies because (1) federal civil rights actions brought in state courts do not require the exhaustion of administrative remedies, (2) his complaint sought relief for an unconstitutional taking of his property without just compensation, and (3) even if the exhaustion doctrine is applicable, "the sheer number of individual fines, the inadequacy of remedies contained in the statutory citation appeal process, and . . . the ongoing nature of the defendants' conduct made such statutory procedures expensive, burdensome and futile." The defendants respond that the trial court properly determined that the remedy provided by the code and § 7-152c (g) was "adequate, as it affords appealing parties full de novo review before a Superior Court judge in accordance with the Superior Court rules and its inherent powers," and that no exception to the exhaustion doctrine was applicable in this case. We agree with the defendants.

We begin with the appropriate standard of review and legal principles that guide our analysis of the plaintiff's claims on appeal. "A motion to dismiss . . . properly attacks the jurisdiction of the court, essentially asserting that the plaintiff cannot as a matter of law and fact state a cause of action that should be heard by the court. . . . A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction. . . . When a . . . court decides a jurisdictional question raised by a pretrial motion to dismiss, it must consider the allegations of the complaint in their most favorable light. . . . In this regard, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader." (Internal quotation marks omitted.)

*Manifold* v. *Ragaglia*, 94 Conn. App. 103, 117, 891 A.2d 106 (2006).

"Because the exhaustion [of administrative remedies] doctrine implicates subject matter jurisdiction, [the court] must decide as a threshold matter whether that doctrine requires dismissal of the [plaintiff's] claim. . . . [Additionally] [b]ecause [a] determination regarding a trial court's subject matter jurisdiction is a question of law, our review is plenary. . . .

"It is a settled principle of administrative law that if an adequate administrative remedy exists, it must be exhausted before the Superior Court will obtain jurisdiction to act in the matter." (Citation omitted; internal quotation marks omitted.) *Fairchild Heights Residents Assn., Inc.* v. *Fairchild Heights, Inc.*, 310 Conn. 797, 807–808, 82 A.3d 602 (2014). "There are two ways to determine whether an administrative remedy has been exhausted. [When] a statute has established a procedure to redress a particular wrong a person must follow the specified remedy and may not institute a proceeding that might have been permissible in the absence of such a statutory procedure. . . . When, however, a statutory requirement of exhaustion is not explicit, courts are guided by [legislative] intent in determining whether application of the doctrine would be consistent with the statutory scheme. . . . Consequently, [t]he requirement of exhaustion may arise from explicit statutory language or from an administrative scheme providing for agency relief." (Internal quotation marks omitted.) Id., 808.

In the present case, there are town ordinances, a rule of practice, and a statute that address the procedure to be used when contesting liability for fines imposed for blight violations. We begin with the statutory scheme. General Statutes § 7-148 (c) (7) (H) (xv) grants a municipality the power to "[m]ake and enforce regulations for the prevention and remediation of housing blight, including regulations reducing assessments and authorizing designated agents of the municipality to enter property during reasonable hours for the purpose of remediating blighted conditions, provided such regulations define housing blight and require such municipality to give written notice of any violation to the owner and occupant of the property and provide a reasonable opportunity for the owner and occupant to remediate the blighted conditions prior to any enforcement action being taken, and further provided such regulations shall not authorize such municipality or its designated agents to enter any dwelling house or structure on such property, and including regulations establishing a duty to maintain property and specifying standards to determine if there is neglect; prescribe civil penalties for the violation of such regulations of not less than ten or more than one hundred dollars for each day that a violation continues and, if such civil penalties are pre-

scribed, such municipality shall adopt a citation hearing procedure in accordance with section 7-152c . . . .”

Pursuant to this statutory authority, the town adopted chapter 88 of the code, the town's blight ordinance, which, inter alia, defines blighted premises, prohibits the creation or maintenance of blighted premises, provides for the creation of a blighted property list, sets forth enforcement and hearing procedures for property owners, authorizes penalties of not more than $100 dollars for each day that the property is in violation of the blight ordinance, and provides that the town may impose and record a lien upon the real estate for unpaid fines.

The statutory citation hearing procedure, set forth in detail in § 7-152c, was incorporated in chapters 88 and 91 of the code. The statute and the code require that the town send written notice before imposing fines and that it provide the cited person with an opportunity to request a hearing before a citation hearing officer to contest liability. Significantly, for purposes of the present appeal, § 7-152c (g) provides: “A person against whom an assessment has been entered pursuant to this section is entitled to judicial review by way of appeal. An appeal shall be instituted within thirty days of the mailing of notice of such assessment by filing a petition to reopen assessment, together with an entry fee in an amount equal to the entry fee for a small claims case pursuant to [General Statutes §] 52-259, at a superior court facility designated by the Chief Court Administrator, which shall entitle such person to a hearing in accordance with the rules of the judges of the Superior Court.” The language in § 91-2 (G) of the code is nearly identical. Practice Book § 23-51, titled “Petition to Open Parking or Citation Assessment,” provides that the hearing before the court shall be de novo.[4]

In this case, the plaintiff did request and attend two hearings before the citation hearing officer, at which time he attempted to challenge the designation of his property as a blighted building. He claims that the hearing officer would not allow him to contest the blight designation through the administrative hearing process. He additionally challenged the imposition of fines for the alleged violations of the blight ordinance. When the hearing officer issued his decisions, however, it is undisputed that the plaintiff did not take an appeal to the Superior Court pursuant to § 7-152c (g) or § 91-2 (G) of the code. The plaintiff would have had thirty days from the mailing of the notice of the hearing officer's determination on the assessment to file his appeal.[5] Instead, the plaintiff commenced the present action on September 6, 2013, which was almost one year after the first hearing and determination, and nearly two months after the second hearing and determination. The hearing officer's decisions regarding the assessments clearly were not appealed within the requisite time period.

The plaintiff claims, however, that he was not required to exhaust the appeal process set forth in § 7-152c (g) or § 91-2 (G) of the code. He argues that the exhaustion doctrine does not apply here because (1) federal civil rights actions brought in state courts do not require the exhaustion of administrative remedies, (2) his complaint sought relief for an unconstitutional taking of his property without just compensation, and (3) even if the exhaustion doctrine is applicable, the remedy provided in the statutory citation appeal process is inadequate, burdensome and futile.

We begin with the plaintiff's argument that he properly sought declaratory and injunctive relief because the defendants' conduct constituted an unconstitutional taking of his property and a violation of his due process rights. He claims that because he has raised constitutional issues, the citation appeals process provides an inadequate remedy at law and he was entitled to pursue alternative relief.[6]

We agree that the citation hearing officer, in an administrative hearing, was not authorized to resolve constitutional claims. It is a "well established common-law principle that administrative agencies lack the authority to determine constitutional questions." *Cumberland Farms, Inc.* v. *Groton*, 262 Conn. 45, 64, 808 A.2d 1107 (2002). Nevertheless, "[i]t [also] is well established that a plaintiff may not circumvent the requirement to exhaust available administrative remedies merely by asserting a constitutional claim. . . . As this court has stated on several occasions, [s]imply bringing a constitutional challenge to an agency's actions will not necessarily excuse a failure to follow an available statutory appeal process. . . . [D]irect adjudication even of constitutional claims is not warranted when the relief sought by a litigant might conceivably have been obtained through an alternative [statutory] procedure . . . which [the litigant] has chosen to ignore. . . . [W]e continue to limit any judicial bypass of even colorable constitutional claims to instances of demonstrable futility in pursuing an available administrative remedy." (Citations omitted; internal quotation marks omitted.) *St. Paul Travelers Cos.* v. *Kuehl*, 299 Conn. 800, 813, 12 A.3d 852 (2011).[7] "Limiting the judicial bypass of colorable constitutional claims to those instances of demonstrable futility is consistent with our duty to eschew unnecessarily deciding constitutional questions . . . ." (Internal quotation marks omitted.) Id.

We are not persuaded that it would have been futile for the plaintiff to raise his claims, challenging the blight designation of his property and the assessments and liens imposed on his property, in the citation appeal process set forth in § 7-152c (g) and § 91-2 (G) of the code.[8] Although the hearing officer refused to address certain issues raised by the plaintiff, the plaintiff was

entitled to a de novo hearing before the Superior Court if he had chosen to pursue it.[9] The Superior Court, being a court of general jurisdiction; *Geremia* v. *Geremia*, 159 Conn. App. 751, 767, 125 A.3d 549 (2015); could have addressed all of the plaintiff's claims and provided adequate relief if the plaintiff prevailed. If the court concluded that the town failed to prove the alleged violations of the blight ordinance and ordered the town to vacate the fines and release the real estate liens, it would not have been necessary to address constitutional issues, including his takings claim.[10] As noted by the trial court in its May 20, 2014 memorandum of decision, "the de novo review provided by statute could have provided the plaintiff with relief from the blight designation and the fines, which would have negated all his claims here."

The plaintiff argues that "bringing scores if not hundreds of separate citation appeals would have been futile and financially onerous." We fail to understand how bringing an appeal from the hearing officer's assessment determinations to the Superior Court pursuant to § 7-152c (g) and § 91-2 (G) of the code would be any more burdensome than filing the present action challenging those very same assessments. The citation appeal process was simple, direct and could have afforded the plaintiff a relatively swift resolution of his claims. If the court determined that the town improperly designated his property as blighted and improperly assessed fines against him, it is unlikely that the town would nevertheless continue to fine him $100 each day despite that court adjudication.

For these reasons, we conclude that the remedy provided in the citation appeal process set forth in § 7-152c (g) and § 91-2 (G) of the code was not inadequate or futile, and that the plaintiff therefore was required to exhaust his administrative remedies.[11] We agree with the trial court that "where a statute has established a procedure to redress a particular wrong a person must follow the specified remedy and may not institute a proceeding that might have been permissible in the absence of such a statutory procedure." *Stepney, LLC* v. *Fairfield*, 263 Conn. 558, 563, 821 A.2d 725 (2003). An aggrieved party "may not bypass the statutory procedure and instead bring an independent action to test the very issue which the appeal was designed to test." (Internal quotation marks omitted.) *LaCroix* v. *Board of Education*, 199 Conn. 70, 78, 505 A.2d 1233 (1986). Accordingly, the court properly dismissed four of the five counts of the plaintiff's complaint.[12]

II

The plaintiff next claims that the court improperly rendered summary judgment on the final count of his complaint, in which he sought the discharge of the municipal blight liens on his property. Specifically, he claims that the court erroneously concluded that he

could not collaterally attack the validity of those liens because he failed to avail himself of the proper procedure to appeal from the hearing officer's assessment determinations. The plaintiff argues that the court's judgment should be reversed because (1) he was not required to exhaust administrative remedies, and (2) the court retained "equitable authority to review the propriety of the blight assessments." The defendants respond that the plaintiff could not attack the validity of the assessments secured by the liens because those assessments were final, and therefore valid, and there was no dispute that the liens were in proper form and duly recorded. We agree with the defendants.

"The law governing summary judgment and the accompanying standard of review are well settled. Practice Book § [17-49] requires that judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. A material fact is a fact that will make a difference in the result of the case. . . . The facts at issue are those alleged in the pleadings. . . .

"In seeking summary judgment, it is the movant who has the burden of showing the nonexistence of any issue of fact. The courts are in entire agreement that the moving party for summary judgment has the burden of showing the absence of any genuine issue as to all the material facts, which, under applicable principles of substantive law, entitle him to a judgment as a matter of law. The courts hold the movant to a strict standard. To satisfy his burden the movant must make a showing that it is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact. . . . As the burden of proof is on the movant, the evidence must be viewed in the light most favorable to the opponent." (Internal quotation marks omitted.) *Brusby* v. *Metropolitan District*, 160 Conn. App. 638, 645–46, 127 A.3d 257 (2015). "Our review of the trial court's decision to grant a motion for summary judgment is plenary." (Internal quotation marks omitted.) Id., 646.

In his complaint, the plaintiff sought discharge of the municipal real estate lien recorded on February 5, 2013, to secure the unpaid $2000 assessment for fines entered by the hearing officer on October 15, 2012, and the municipal real estate lien recorded on April 16, 2013, to secure the unpaid $4700 assessment for additional fines entered by the hearing officer on February 21, 2013.[13] When the defendants filed their motion for summary judgment on this count of the complaint, they submitted an affidavit by the town manager attesting to the procedure employed in securing and recording the blight liens. The plaintiff filed an objection to the defendants' motion for summary judgment, but did not

file a counteraffidavit challenging the contents of the town manager's affidavit.[14]

Following a hearing, the court issued its January 7, 2015 memorandum of decision granting the defendants' motion and rendering summary judgment on count four of the plaintiff's complaint. The court first noted that it was undisputed that the liens were placed on the plaintiff's property because he failed to pay the assessments for fines entered by the hearing officer on October 15, 2012, and February 21, 2013. The court also noted that the plaintiff, by letter dated October 7, 2014, demanded that the town discharge the liens, claiming that they were invalid. Additionally, the court determined that the plaintiff did not dispute that the procedural steps in securing the liens were followed by the town.

Although the plaintiff claimed that General Statutes § 49-35b required the town to show that it had probable cause to sustain the validity of their liens, the trial court determined, and we agree, that § 49-35b pertains to mechanics' liens and is not applicable under these circumstances. The court then concluded that General Statutes § 49-51 was the proper statute by which to request the discharge of the municipal blight liens.[15] After quoting the language from the statute and citing applicable case law, the court rendered summary judgment for the following reason: "Here the plaintiff failed to avail himself of the appellate remedy in which he could have pursued all the arguments he makes here as to [the] invalidity of the assessments on which the liens are based. He cannot now use the statutory process of General Statutes § 49-51 to do the same thing. Where the same claims could have been asserted in a timely appeal, the plaintiff's claims as to the invalidity of the liens are nothing more than an impermissible collateral attack on their validity. . . . In the absence of an appeal, the town's decisions are final and not reviewable. . . . Consequently, there are no issues of material fact regarding the legality of the assessments and thus the liens." (Citations omitted.) We agree with the reasoning of the trial court and, accordingly, find this claim of the plaintiff to be without merit.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The named individual defendants were Kathleen Eagen, the town manager, Jeffrey Hogan, the chairperson of the town council, and Nancy Nickerson, Charles Keniston, and C.J. Thomas, three additional members of the town council.

[2] Section 91-2 (G) of the code is the same in all material respects to the provisions set forth in General Statutes § 7-152c (g).

[3] The plaintiff filed a motion for reconsideration on June 6, 2014. The court granted the motion, but, following a hearing, ordered that its May 20, 2014 decision remain unchanged for the reasons as stated therein.

[4] Practice Book § 23-51 provides: "(a) Any aggrieved person who wishes to appeal a parking or citation assessment issued by a town, city, borough or other municipality shall file with the clerk of the court within the time limited by statute a petition to open assessment with a copy of the notice of assessment annexed thereto. A copy of the petition with the notice of

assessment annexed shall be sent by the petitioner by certified mail to the town, city, borough or municipality involved.

"(b) Upon receipt of the petition, the clerk of the court, after consultation with the presiding judge, shall set a hearing date on the petition and shall notify the parties thereof. There shall be no pleadings subsequent to the petition.

"(c) The hearing on the petition shall be de novo. There shall be no right to a hearing before a jury."

[5] As previously noted, the hearing officer's decision following the July 2, 2013 hearing was mailed to the plaintiff on July 10, 2013.

[6] The plaintiff additionally claims that the remedy provided in the citation appeals process is inadequate because he was limited to thirty days to file his appeal and he had no right to a jury trial. He cites no persuasive authority for his claim that a thirty day appeal period is inadequate.

With respect to his claim regarding the lack of a jury trial, it is well settled that "[i]t is not the plaintiff's preference for a particular remedy that determines whether the remedy . . . is adequate . . . and an administrative remedy, in order to be adequate, need not comport with the plaintiff's opinion of what a perfect remedy would be." (Internal quotation marks omitted.) *Stepney, LLC* v. *Fairfield*, 263 Conn. 558, 568, 821 A.2d 725 (2003).

[7] Contrary to the plaintiff's argument, even claims brought pursuant to 42 U.S.C. § 1983 are subject to the exhaustion of administrative remedies doctrine. "[T]he available legal remedy [under General Statutes § 4-183 (a) of the Uniform Administrative Procedure Act] is adequate and no form of injunctive relief, under § 1983 or otherwise, is justified as an exception to the exhaustion requirement in this case . . . ." *Pet* v. *Dept. of Health Services*, 207 Conn. 346, 369, 542 A.2d 672 (1988).

[8] "It is futile to seek a remedy only when such action *could not* result in a favorable decision . . . ." (Emphasis in original; internal quotation marks omitted.) *Neiman* v. *Yale University*, 270 Conn. 244, 260, 851 A.2d 1165 (2004).

[9] In a de novo hearing before the Superior Court, the plaintiff also could have raised his claims that he was not provided notice of hearings and that the town or citation hearing officer failed to follow requisite procedures in the assessment and review process.

[10] In his complaint, the plaintiff also claimed that the town's blight ordinance was "unconstitutionally vague as applied to the plaintiff in this case . . . ." If the court determined that the plaintiff's constitutional claims needed to be resolved, it had the power to do so because review of administrative decisions may address constitutional infirmities of underlying statutes even though the administrative agency lacked the jurisdiction to do so. See *Rayhall* v. *Akim Co.*, 263 Conn. 328, 337–41, 819 A.2d 803 (2003); *Rudy's Limousine Service, Inc.* v. *Dept. of Transportation*, 78 Conn. App. 80, 88, 826 A.2d 1161 (2003).

[11] The defendants' motion to dismiss was argued and decided on the ground that the plaintiff failed to exhaust his administrative remedies because he did not appeal from the hearing officer's assessment determinations to the Superior Court in accordance with in the citation appeal process set forth in § 7-152c (g) and § 91-2 (G) of the code. The plaintiff, although not directly, seems to argue that exhaustion of administrative remedies does not apply to an appeal to the Superior Court, but rather requires only an aggrieved party's participation at the agency level. It is true that most cases addressing the exhaustion doctrine pertain to a party's attempt to avoid agency proceedings in favor of commencing an independent action in the Superior Court. Nevertheless, the doctrine does apply in situations similar to the present case. In *Pet* v. *Dept. of Health Services*, 207 Conn. 346, 542 A.2d 672 (1988), our Supreme Court concluded that the plaintiff failed to exhaust his administrative remedies when he commenced an independent action for injunctive relief in the Superior Court instead of appealing from the department's decision to the Superior Court pursuant to General Statutes § 4-183 (a) of the Uniform Administrative Procedure Act. Id., 348–52. The court remanded the matter to the trial court with direction to dismiss the case for lack of jurisdiction. Id., 373.

It is important to note, however, that the plaintiff had missed the deadline for filing an appeal from the hearing officer's decisions pursuant to § 7-152c (g) and § 91-2 (G) of the code, and, instead, was collaterally attacking those decisions in the present action. The hearing officer's decisions became final when the plaintiff failed to follow the statutory procedure by filing his appeal with the Superior Court within thirty days of the mailing of the notice of those decisions. "As a general matter, administrative decisions are entitled

to preclusive effect." *Cumberland Farms, Inc.* v. *Groton*, supra, 262 Conn. 61. The plaintiff's present action was an impermissible collateral attack on the validity of the hearing officer's assessment determinations. See *Upjohn Co.* v. *Zoning Board of Appeals*, 224 Conn. 96, 616 A.2d 793 (1992).

[12] The plaintiff's final claim is that the doctrine of administrative exhaustion is barred in this case by the doctrine of judicial estoppel. The plaintiff argues that the defendants took a position contrary to the one taken in this appeal with respect to a subsequent set of blight citations issued to the plaintiff. We reject this claim for the reasons set forth in our decision on the town's related appeal, which was released on the same date as this opinion. See *Mangiafico* v. *Farmington*, 173 Conn. App. 178,      A.3d      (2017).

[13] General Statutes § 7-148aa provides: "Any unpaid penalty imposed by a municipality pursuant to the provisions of an ordinance regulating blight, adopted pursuant to subparagraph (H) (xv) of subdivision (7) of subsection (c) of section 7-148, shall constitute a lien upon the real estate against which the penalty was imposed from the date of such penalty. Each such lien may be continued, recorded and released in the manner provided by the general statutes for continuing, recording and releasing property tax liens. Each such lien shall take precedence over all other liens filed after July 1, 1997, and encumbrances except taxes and may be enforced in the same manner as property tax liens."

[14] The plaintiff filed three supplemental affidavits in support of his objection to the motion for summary judgment. These affidavits do not challenge the contents of the town manager's affidavit, and, in particular, they do not allege that the defendants failed to follow the proper procedure in securing and recording the blight liens.

[15] General Statutes § 49-51 (a) provides in relevant part: "Any person having an interest in any real or personal property described in any certificate of lien, which lien is invalid but not discharged of record, may give written notice to the lienor sent to him at his last-known address by registered mail or by certified mail, postage prepaid, return receipt requested, to discharge the lien. . . . If the lien is not discharged within thirty days of the notice, that person may apply to the Superior Court for such a discharge, and the court may adjudge the validity or invalidity of the lien and may award the plaintiff damages for the failure of the defendant to make discharge upon request. . . ."