******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# THE METROPOLITAN DISTRICT COMMISSION *v.*
# MARRIOTT INTERNATIONAL, INC., ET AL.
# (AC 44790)

Prescott, Elgo and Cradle, Js.

*Syllabus*

The plaintiff municipal water control authority sought to recover damages
from the defendants, the state of Connecticut and M Co., a hotel franchi-
sor, for breach of contract and unjust enrichment. The plaintiff entered
into a developer permit agreement with the state, which authorized the
state to construct and install a new sanitary sewer main for a mixed-use
development project in downtown Hartford. The state's subcontractors
constructed the authorized sewer main along with a lateral sewer line
that extended from the sewer main to a newly constructed hotel. Thir-
teen years after the hotel opened, the plaintiff commenced this action,
claiming that the hotel's connection to the sewer main was performed
without a permit or an inspection by the plaintiff, that, as a result, the
state remained liable for all maintenance and repairs of the sewer main,
and that the state had failed to pay the plaintiff for such repairs. The
trial court granted the state's motion to dismiss all counts against it on
the ground of sovereign immunity. Prior to the filing of any responsive
pleading by M Co., the plaintiff elected to exercise its administrative
prerogative pursuant to the applicable statute (§ 7-249) to levy a special
benefit assessment on the hotel property, which was in an amount equal
to the amount of the damages that it sought in the pending civil action.
Neither M Co. nor any entity associated with the ownership or manage-
ment of the hotel property exercised or attempted to exercise its right
to appeal the assessment. The assessment went unpaid, and the plaintiff
filed a lien on the hotel's land records. Thereafter, M Co. filed a motion
for summary judgment in the civil action, which the trial court granted,
finding that the plaintiff's claims were barred by the applicable statute
of limitations (§ 52-576 (a)) and that the plaintiff had sued the wrong
party, as M Co. did not own, manage or do business as the hotel, nor
was it party to any written agreement involving the plaintiff. Following
the trial court's judgment, the manager for the hotel sent a letter to the
plaintiff asking it to release the sewer benefit assessment lien that it
had filed against the hotel property in light of the court's decision. The
plaintiff refused to release the lien, claiming that the lien did not have any
relationship to the civil litigation. Thereafter, M Co. filed a postjudgment
motion in the civil action, requesting that the trial court find the plaintiff
in contempt and order the discharge of the lien. The trial court declined
to hold the plaintiff in contempt but ordered the discharge of the lien,
and the plaintiff appealed to this court. *Held* that the trial court acted
in excess of its authority and abused its discretion by ordering the
discharge of the sewer benefit assessment lien: the plaintiff had the
authority both to bring the action seeking compensatory damages on
the theory of breach of contract and unjust enrichment and to levy the
sewer benefit assessment against the hotel property pursuant to § 7-
249, those options were not mutually exclusive, and the relative merits
of the civil action had no bearing on the validity of the plaintiff's decision
to exercise its separate and distinct administrative authority to levy a
sewer benefit assessment or on the validity of any resulting lien; more-
over, the exclusive method to challenge the propriety of the sewer
assessment lien was to file an appeal pursuant to the applicable statute
(§ 7-250), and, because neither M Co. nor any other party associated
with the hotel property ever filed such an appeal, the assessment became
final and presumptively valid after the appeal period passed without a
challenge to it and that assessment could not be collaterally challenged
in the civil action; furthermore, the trial court's discharge of the sewer
assessment lien could not be construed as a proper exercise of its
inherent authority to issue orders necessary to protect or vindicate its
prior judgment or of its authority pursuant to statute (§ 49-51) because
allowing the plaintiff to file the lien and potentially foreclose on it would

not undermine the trial court's final judgment, as the only final judgment it had rendered was summary judgment on the complaint, that judgment did not reach the merits of the causes of action alleged, and the lien existed prior to the summary judgment ruling, and the trial court abused its discretion by considering whether to discharge the lien pursuant to § 49-51 without making the required findings thereunder regarding the validity of the lien, as nothing in the court's decision suggested that the lien was jurisdictionally defective, not in proper form, or not duly recorded; additionally, there was no merit to M Co.'s arguments that either res judicata or judicial estoppel provided an alternative basis on which to affirm the judgment of the trial court.

Argued March 9—officially released October 25, 2022

*Procedural History*

Action to recover damages for, inter alia, breach of contract, and for other relief, brought to the Superior Court in the judicial district of Hartford and transferred to the Complex Litigation Docket, where the court, *Schuman, J.*, granted the motion to dismiss filed by the defendant state of Connecticut; thereafter, the court, *Schuman, J.*, granted the named defendant's motion for summary judgment and rendered judgment thereon; subsequently, the court, *Schuman, J.*, granted in part the named defendant's postjudgment motion for contempt and application to discharge lien and ordered the plaintiff to discharge a lien on certain real property, and the plaintiff appealed to this court. *Reversed in part*; *judgment directed*.

*John W. Cerreta*, with whom, on the brief, were *Hannah F. Kalichman* and *William J. Sweeney*, for the appellant (plaintiff).

*John C. Pitblado*, with whom, on the brief, was *Brendan N. Gooley*, for the appellee (named defendant).

*Opinion*

PRESCOTT, J. The plaintiff, the Metropolitan District Commission, a municipal water control authority, elected to pursue two separate and distinct legal avenues to recoup costs associated with the construction, connection, and use of certain sewer improvements that it authorized as part of the Adriaen's Landing development project in Hartford. First, it brought the civil action from which this appeal arises against the defendant Marriott International, Inc.,[1] in which it alleged breach of contract and unjust enrichment. Second, the plaintiff initiated a separate administrative proceeding pursuant to General Statutes §§ 7-249[2] and 7-254 (b),[3] in which it imposed a sewer benefit assessment on the Marriott Harford Downtown property at 200 Columbus Boulevard. We are asked to decide in the present appeal whether the trial court in the civil action improperly ordered in a postjudgment proceeding the discharge of a sewer benefit assessment lien perfected against the Marriott Hartford Downtown property as a result of the contemporaneous and unchallenged administrative action.

The plaintiff appeals from the court's ruling on a combined motion for contempt and application to discharge lien that the defendant filed after the court had rendered summary judgment in favor of the defendant on the plaintiff's complaint in the underlying civil action. Although the court declined to hold the plaintiff in contempt, it ordered the discharge of a lien that the plaintiff had filed on the land records regarding the Marriott Hartford Downtown property during the pendency of the civil action to enforce an unpaid and unchallenged sewer benefit assessment levied by the plaintiff. The plaintiff claims on appeal that the trial court's order discharging the lien "exceed[ed] its jurisdiction" and constituted an "unlawful end run around [General Statutes] § 7-250,"[4] which, the plaintiff argues, is the " 'exclusive remedy available' for challenging sewer benefit assessments," quoting *Vaill* v. *Sewer Commission*, 168 Conn. 514, 519, 362 A.2d 885 (1975).

The defendant responds that we should affirm the trial court's decision because the court had the jurisdiction and/or authority to order the lien discharged either pursuant to its continuing jurisdiction to effectuate its summary judgment decision rendered in favor of the defendant or pursuant to General Statutes § 49-51, which grants the Superior Court authority to discharge "*any* certificate of lien . . . ." (Emphasis added.) General Statutes § 49-51 (a).[5] Alternatively, the defendant argues that the court's action may be affirmed on the grounds of res judicata and/or judicial estoppel. We conclude that the trial court lacked authority to entertain in the civil action any challenge to the propriety of the sewer benefit assessment underlying the lien and that, even if we assume without deciding that the court

had some limited authority to consider an application to discharge the lien, the court improperly did so under the facts and circumstances presented. Because we agree with the plaintiff that the court improperly ordered the lien discharged, we reverse in part the judgment of the court and remand the matter with direction to deny the defendant's postjudgment motion in its entirety.

The following procedural history and facts, which either are undisputed in the summary judgment record or found by the court in its ruling on the defendant's postjudgment motion, are relevant to our review of the plaintiff's claim on appeal. In 2001, the plaintiff entered into a developer permit agreement with the state of Connecticut, acting through the Office of Policy and Management (state). The agreement authorized the state to construct and install a new sanitary sewer main within Adriaen's Landing, a planned, mixed-use development project along the riverfront in downtown Hartford. The state, through one of its subcontractors, constructed the authorized sewer main, which included the construction of a lateral sewer line that extended from the newly constructed sewer main to the present site of the Marriott Hartford Downtown hotel. After the hotel was constructed, the hotel's sewer service pipe was connected to the lateral sewer line. The Marriott Hartford Downtown opened and began operating in August, 2005.[6]

In April, 2018, the plaintiff commenced the underlying civil action against the defendant and the state. The operative complaint contained four counts. Counts one and three sounded in breach of contract and unjust enrichment against the state. Counts two and four sounded in breach of contract and unjust enrichment against the defendant. According to the complaint, the Marriott Hartford Downtown's connection to the sewer main via the lateral line was performed without a permit or any inspection by the plaintiff, and, consequently, under the terms of the agreement between the plaintiff and the state, the state remained liable for all maintenance and repairs of the sewer main. The complaint further stated that, despite various attempts by the plaintiff to collect outstanding charges and repairs totaling $312,885, the state had failed to pay the plaintiff. These same allegations formed the basis for the unjust enrichment count against the state.

With regard to the two counts brought against the defendant, the complaint, without referencing any specific agreement between the plaintiff and the defendant, alleged that the plaintiff provides "sanitary sewer services" to the Marriott Hartford Downtown and that the defendant "has never paid for sewer use charges," the fair value of which the plaintiff alleged totals $312,885. The complaint did not expressly allege that the defendant owed the plaintiff for charges or fees associated

with the hotel's connection to the sewer main via the lateral line.[7]

The civil action was transferred to the complex litigation docket in June, 2018. For the next two years, the defendant, with the consent of all parties, sought and was granted numerous modifications to the court's initial scheduling order regarding the filing of responsive pleadings. Eventually, on July 13, 2020, the state filed a motion to dismiss all counts against it on sovereign immunity grounds,[8] and the defendant filed an answer to the complaint and special defenses. One of the special defenses asserted by the defendant alleged that the breach of contract and unjust enrichment counts against it were barred by General Statutes § 52-576, the applicable statute of limitations.[9]

During this period of relative inactivity in the civil action, the plaintiff elected to exercise its administrative prerogative under § 7-249; see footnote 2 of this opinion; and levied a special benefit assessment on the Marriott Hartford Downtown property. More specifically, in February, 2020, before any responsive pleading had been filed in the civil action, the plaintiff issued a notice of public hearing and a schedule of assessment to the defendant as well as to several other entities that the plaintiff had identified as possibly having "an ownership interest in the real property or responsibility for any sewer assessment against the real property . . . ."[10]

The plaintiff held a public hearing on February 26, 2020, which was attended by counsel representing the defendant in the underlying civil action. In June, 2020, the plaintiff levied a sewer benefit assessment of $312,885 against the defendant, which was the same amount that it sought as damages in the pending civil action.

Significantly, neither the defendant nor any entity associated with the ownership or management of the Marriott Hartford Downtown property exercised or attempted to exercise its right to appeal the plaintiff's assessment pursuant to § 7-250. Thus, despite an opportunity to raise any challenge to the assessment at that time, the defendant elected to remain silent. Furthermore, neither party informed the trial court about the existence of the assessment proceedings. The assessment went unpaid, and a lien was filed on the land records regarding the Marriott Hartford Downtown property in accordance with § 7-254 (b) in the amount of $318,600.55.[11]

In October, 2020, the defendant filed a motion in the civil action seeking summary judgment on both counts of the complaint against it. It argued that the plaintiff's breach of contract and unjust enrichment counts were barred by the applicable statute of limitations and, alternatively, that the plaintiff, effectively, had sued the

wrong party because no legal relationship on which to find liability existed between the plaintiff and the defendant. On January 29, 2021, the trial court, *Schuman*, *J.*, granted the defendant's motion and rendered summary judgment in favor of the defendant on both counts of the plaintiff's complaint asserted against it.

In its memorandum of decision, the court explained that the six year statute of limitations in § 52-576 (a) applied to both counts[12] and that the undisputed evidence presented by the defendant showed that any contractual or equitable obligation the defendant might have had to pay a sewer connection charge accrued sometime before September, 2005, meaning that the plaintiff should have filed its civil action before September, 2011. The court principally relied on an affidavit that the defendant filed in support of the motion for summary judgment that was sworn by Raj Dansinghani, the chief financial officer of Waterford Group, LLC, an entity that Dansinghani averred manages the Marriott Hartford Downtown. As stated by the court in its summary judgment decision, "Dansinghani avers that, sometime between September, 2003, and August, 2005, construction of underground improvements took place at the site of the future Marriott Hartford [Downtown]. During this time period, a subcontractor for the state connected the sewer main to the piping underneath the Marriott Hartford [Downtown]. . . . The affidavit states that Marriott Hotel (although not Marriott International, Inc.) has paid the sewer usage bill regularly and that, prior to the filing of suit, the plaintiff never billed the defendant or even demanded payment for the sewer connection charge." (Citation omitted; internal quotation marks omitted.) The court concluded that the plaintiff's filing of the underlying action in 2018 was "obviously well beyond the statute of limitations."

The court also agreed with the defendant's argument that it "ha[d] no legal relationship with the plaintiff, that it did not breach a contract with the plaintiff, and that it was not the entity, if any, that was unjustly enriched." The court relied again on uncontested evidence submitted by the defendant in support of summary judgment that established that the defendant did not own, manage, or do business as the Marriott Hartford Downtown, nor was the defendant a party to any written agreement involving the plaintiff. The court concluded that the plaintiff had sued the wrong party and that the defendant's argument went "to the very merits of the case" and was "a proper basis for summary judgment." Because the plaintiff had not presented any contrary evidence, the court concluded that "the defendant is entitled to summary judgment on this ground as well." The court made no reference in its summary judgment decision to the existing sewer benefit assessment lien. The plaintiff did not file an appeal challenging the court's rendering of summary judgment against it, nor does it raise any challenge to this ruling in the pres-

ent appeal.

After the court rendered summary judgment for the defendant, Dansinghani, acting in his managerial role for the Marriott Hartford Downtown, sent a letter to the plaintiff asking it to execute a release of the sewer benefit assessment lien that it had filed on the Marriott Hartford Downtown property in light of the court's summary judgment decision in favor of the defendant. The plaintiff sent a response indicating that the lien had no relationship to the civil litigation, and it did not execute the requested release of the lien.

On April 28, 2021, the defendant filed a postjudgment motion in the civil action that it captioned "a motion for contempt and application to discharge lien." It asked the court to find the plaintiff in contempt for having levied the sewer benefit assessment and filing the corresponding lien after nonpayment of the assessment because, according to the defendant, the lien was invalid in light of the court's subsequent summary judgment ruling. It also requested that the court order the discharge of the plaintiff's benefit assessment lien. The plaintiff filed an opposition to the defendant's postjudgment motion. The plaintiff argued that the lien was unrelated to the contractual obligations litigated in the civil action but, instead, was the result of the unpaid sewer benefit assessment, which was levied in administrative proceedings that were legally and factually distinct from the underlying civil litigation. The plaintiff maintained that "the lien is valid and should have been challenged through the appeal process for the sewer assessment itself not as a motion in a separate contractual lawsuit."

The court issued a decision on June 2, 2021, in which it declined to hold the plaintiff in contempt but nevertheless ordered the discharge of the plaintiff's lien.[13] The court concluded that if it allowed the plaintiff to maintain the lien, it would somehow undermine the summary judgment it had rendered in favor of the defendant. Although the court acknowledged that the plaintiff's assessment and lien were imposed in a statutorily authorized proceeding that was separate from the underlying civil action, it found that the plaintiff's "efforts [in obtaining the lien] address precisely the same controversy." The court continued: "[The plaintiff] cannot and does not dispute that its assessment and lien seek the same principal sum of money from the same party for the same sewer connection and service. And, *although* [*the plaintiff*] *could have noticed the assessment* [*a*]*t any time under the statute*, it instead waited approximately nineteen years, until it faced the possibility of losing its Superior Court action concerning the same charge, to file *what otherwise would have been a routine sewer assessment.*

"Under these circumstances, allowing [the plaintiff] to file a lien, and possibly foreclose on it, would under-

mine the court's final judgment. [The plaintiff] gave the court no notice that it had instituted a parallel proceeding to collect the same charge. Had it done so, the court could have attempted to consolidate the two cases or at least make an informed decision as to the order in which they should proceed. As it stands now, however, it appears that the court's efforts on this case were a complete waste of judicial resources. The lien filed by [the plaintiff] potentially could render the court's final judgment meaningless.

"Courts are not powerless to protect their judgments. A trial court has continuing jurisdiction to effectuate prior judgments. . . . [A] trial court's continuing jurisdiction is not separate from, but, rather, derives from, its equitable authority to vindicate judgments . . . such equitable authority does not derive from the trial court's contempt power, but, rather, from its inherent powers." (Citation omitted; emphasis added; internal quotation marks omitted.)

The court stated that it was "exercis[ing] its inherent authority to vindicate its judgment" and ordered the discharge of the plaintiff's lien on the Marriott Hartford Downtown property. Although it expressly invoked its inherent authority, the court also included a citation to § 49-51 (a), presumably relying on the statute as an additional source of authority to discharge the lien. Finally, the court concluded that, "[b]ecause [it] does not have evidence concerning the wilfulness or bad faith of [the plaintiff] in imposing the assessment and filing the lien, the court . . . declines [the defendant's] request for a finding of contempt and an award of costs and attorney's fees."[14] This appeal followed.

The plaintiff claims on appeal that the trial court, in ruling on the defendant's postjudgment motion, improperly ordered the discharge of its sewer benefit assessment lien, which the plaintiff argues exceeded the court's jurisdiction and constituted an "unlawful end run around § [7-250] . . . ." The defendant disagrees, contending that the court either had continuing jurisdiction to invalidate the lien as a means of effectuating its summary judgment ruling in favor of the defendant or that it properly acted pursuant to the statutory authority granted it by § 49-51. Alternatively, the defendant argues that the plaintiff's claim is barred by res judicata and/ or judicial estoppel. For the reasons that follow, we agree with the plaintiff that the court improperly ordered the sewer benefit assessment lien discharged and reject the defendant's arguments to the contrary. Accordingly, we reverse in part the judgment of the court and remand with direction to deny, in total, the defendant's postjudgment motion.

We begin with our standard of review and relevant legal background regarding sewer benefit assessments. "Any determination regarding the scope of a court's subject matter jurisdiction or its authority to act pre-

sents a question of law over which our review is plenary." *Tarro* v. *Mastriani Realty, LLC*, 142 Conn. App. 419, 431, 69 A.3d 956, cert. denied, 309 Conn. 912, 69 A.3d 308 (2013), and cert. denied, 309 Conn. 912, 69 A.3d 309 (2013). Thus, we engage in plenary review of the plaintiff's claim that, by ordering the discharge of the sewer benefit assessment lien, the court exceeded its jurisdiction or authority. To the extent that we determine that the trial court had authority to act, our review of the court's exercise of that authority is limited to whether the court abused its discretion; see *Rosado* v. *Bridgeport Roman Catholic Diocesan Corp.*, 276 Conn. 168, 211, 884 A.2d 981 (2005); meaning we consider "whether the trial court correctly applied the law and reasonably could have reached the conclusion that it did." (Internal quotation marks omitted.) *Lyme Land Conservation Trust, Inc.* v. *Platner*, 325 Conn. 737, 759, 159 A.3d 666 (2017).

The plaintiff is not an ordinary, private litigant but, instead, is a public, nonprofit municipal corporation that was created by a special act of the General Assembly in 1929. See 20 Spec. Acts 1204, No. 511, § 1 (1929). As previously explained by our Supreme Court, the plaintiff "was given broad powers relating to sewage disposal, water supply and regional planning as well as powers limited to certain highways. . . . The [plaintiff] has been designated the water pollution control authority for the metropolitan district, which includes eight member and five nonmember towns in the greater Hartford area . . . . The [plaintiff's] authority is limited to those powers that have been expressly granted to it by the state or that are necessary for it to discharge its duties and to carry out its objects and purposes." (Citations omitted; internal quotation marks omitted.) *777 Residential, LLC* v. *Metropolitan District Commission*, 336 Conn. 819, 829, 251 A.3d 56 (2020).

Among the powers granted to the plaintiff by the legislature is the authority to sue and be sued. See *Rocky Hill Convalescent Hospital, Inc.* v. *Metropolitan District*, 160 Conn. 446, 455, 280 A.2d 344 (1971). Accordingly, the plaintiff has the authority to initiate a civil action in the Superior Court to vindicate its contractual rights or to seek other legal and equitable remedies.

In addition, § 7-249 provides in relevant part: "*At any time* after a municipality, by its water pollution control authority, has acquired or constructed, a sewerage system or portion thereof, *the water pollution control authority may levy benefit assessments* upon the lands and buildings in the municipality which, in its judgment, are especially benefited thereby, whether they abut on such sewerage system or not, and upon the owners of such land and buildings, according to such rule as the water pollution control authority adopts, subject to the right of appeal as hereinafter provided. . . ." (Empha-

sis added.) Thus, by its clear and unambiguous terms, § 7-249 grants to municipal entities like the plaintiff broad authority and discretion, *unrestricted by any express limitation period*, to levy assessments on properties that have benefitted from a municipal sewer system.[15] Indeed, the plaintiff has an obligation to its rate payers to recover the cost of appropriate expenditures that are made for the benefit of properties like the Marriott Hartford Downtown.

If a water pollution control authority chooses to exercise its authority and levies a sewer benefit assessment, § 7-250 authorizes anyone aggrieved by such an assessment to file an appeal no later than twenty-one days after the assessment is filed. See footnote 4 of this opinion. Our Supreme Court previously has held that § 7-250 provides "a complete remedy by means of an appeal . . . whereby the court may exercise its inherent broad equitable powers to confirm or to alter the assessment . . . ." *Vaill* v. *Sewer Commission*, supra, 168 Conn. 519. "It is the general rule, with reference to special assessments of benefits, that *an assessment legally made cannot be attacked in a collateral proceeding* but requires pursuit of the statutory remedy for review, unless the assessment is void. . . . [If] an assessment [is] made and the person assessed did not appeal, that person [can] later urge only such objections as show a want of jurisdiction. If the commission assesses benefits where a property is not benefited, it commits an error but does not act beyond its jurisdiction. . . . Section 7-250 does not limit the grounds for the taking of the appeal, other than that the person taking the appeal [must] be aggrieved, and affords such person the opportunity to seek complete judicial relief." Id., 518–19. (Citations omitted; emphasis added.)

This court's decision in *Mangiafico* v. *Farmington*, 173 Conn. App. 158, 163 A.3d 689 (2017), rev'd in part on other grounds, 331 Conn. 404, 204 A.3d 1138 (2019), is instructive on the issue of whether a court properly may discharge in a collateral civil action a lien that is the result of an unpaid municipal assessment from which no appeal was taken. In *Mangiafico*, the plaintiff had filed a civil action alleging violations of his federal and state constitutional rights and intentional infliction of emotional distress arising from the town's placing his residential property on the town's blight list and filing liens on his property for unpaid municipal blight citations. Id., 160–61. In addition to seeking damages and declaratory and injunctive relief, he also asked the court to discharge the liens. Id., 161. The court dismissed four of the five counts of the complaint on the ground that the plaintiff had failed to exhaust his administrative remedies, and it also granted the defendant town's motion for summary judgment on the remaining count seeking discharge of the blight liens on concluding that the plaintiff could not collaterally attack the validity of the assessments underlying the liens. Id., 164–65. The

plaintiff appealed. Id., 165.

This court affirmed the judgment of the trial court and adopted its reasoning with respect to the issue of the discharge of the municipal liens. Id., 177. The trial court had determined that § 49-51 was "the proper statute by which to request the discharge of the municipal blight liens" but concluded that the defendant town was entitled to summary judgment because "the plaintiff failed to avail himself of the appellate remedy in which he could have pursued all the arguments he makes here as to [the] invalidity of the assessments on which the liens are based. He cannot now use the statutory process of . . . § 49-51 to do the same thing. Where the same claims could have been asserted in a timely appeal, the plaintiff's claims as to the invalidity of the liens are nothing more than an impermissible collateral attack on their validity. . . . In the absence of an appeal, the town's decisions are final and not reviewable." (Internal quotation marks omitted.) Id. This court agreed with the defendants that "the plaintiff could not attack the validity of the assessments secured by the liens because those assessments were final, and therefore valid, and there was no dispute that the liens were in proper form and duly recorded." Id., 175. With the foregoing in mind, we turn to the present case.

It is important at the outset to recognize that the plaintiff was entirely within its rights as a municipal water pollution control authority to pursue any and all legal avenues open to it. Because the state granted the plaintiff the power to sue and be sued; see *Rocky Hill Convalescent Hospital, Inc.* v. *Metropolitan District*, supra, 160 Conn. 455; one option was to bring the underlying action seeking compensatory damages on a theory of breach of contract or unjust enrichment. Another was to exercise its authority to levy a sewer benefit assessment against the property. See General Statutes § 7-249. These two options are not mutually exclusive, and neither the trial court nor the defendant has cited to any legal authority, or any prior order of the court, pursuant to which the plaintiff was barred from following these parallel legal paths. Whether the causes of action raised in the complaint in the underlying action had merit—an issue that was never resolved by the court—is not relevant to our resolution of the present appeal because the relative merits of the underlying civil action have no bearing on the validity of the plaintiff's decision to exercise its separate and distinct administrative authority to levy a sewer benefit assessment or on the validity of any resulting lien.

We take this opportunity to emphasize that the exclusive method by which to challenge the propriety of the sewer benefit assessment levied by the plaintiff was an appeal filed pursuant to § 7-250. See *Zizka* v. *Water Pollution Control Authority*, 195 Conn. 682, 690, 490 A.2d 509 (1985) (§ 7-250 provides "exclusive adequate

remedial system" for challenging sewer assessments); *Vaill* v. *Sewer Commissioner*, supra, 168 Conn. 519 (because § 7-250 "provides for a complete remedy by means of an appeal . . . [it] is the exclusive remedy available"). As part of such an appeal, the defendant could have raised any legal arguments it had with respect to the validity of the assessment, including whether the plaintiff should have been barred from levying an assessment against the Marriott Hartford Downtown property on the basis of a sewer connection that had occurred nearly fifteen years earlier; or whether there was a proper legal and factual basis for the amount of the assessment, which was identical to the amount of damages it sought in the ongoing civil action; or whether the defendant was properly named as one of the parties potentially liable for its payment. Instead, the defendant never attempted to exercise its right to appeal the assessment, nor was any appeal filed by any other party associated with the property.

After the appeal period passed with no challenge to the assessment, the assessment became final and presumptively valid. See *Mangiafico* v. *Farmington*, supra, 173 Conn. App. 175. It could not be collaterally challenged in the underlying civil action except for a "want of jurisdiction"; *Vaill* v. *Sewer Commission*, supra, 168 Conn. 519; which was never considered by the court. To the extent that the court's rationale for ordering the discharge of the resulting lien appeared to be premised, at least in part, on its displeasure with the parallel assessment proceedings, and particularly the court's lack of notice thereof, such concerns do not alter the fact that the court had no legal authority to adjudicate the validity of the assessment in the context of the case before it.[16]

In ordering the discharge of the sewer assessment lien, the court, nevertheless, invoked both its inherent authority to vindicate or effectuate a prior court judgment and, impliedly, its statutory authority under § 49-51. We discuss each of these in turn. We conclude that, under the circumstances, neither provides a proper alternative basis for the court's order to discharge the sewer assessment lien.

As our Supreme Court has recognized, a trial court has "continuing jurisdiction to effectuate its prior judgments, either by summarily ordering compliance with a clear judgment or by interpreting an ambiguous judgment and entering orders to effectuate the judgment as interpreted . . . ." *AvalonBay Communities, Inc.* v. *Plan & Zoning Commission*, 260 Conn. 232, 246, 796 A.2d 1164 (2002). This broad power "is grounded in its inherent powers, and is not limited to cases wherein the noncompliant party is in contempt, family cases, cases involving injunctions, or cases wherein the parties have agreed to continuing jurisdiction." Id. Although we acknowledge the existence of the court's general

inherent authority to issue orders necessary to protect or vindicate a prior judgment, we are unconvinced that the court's discharge of the sewer benefit assessment lien in the present action can be construed as a proper exercise of that authority.

The court stated that allowing the plaintiff to file a lien and possibly foreclose on it would undermine the court's final judgment. The only final judgment it had rendered, however, was the summary judgment on the complaint in favor of the defendant. That judgment did not reach the merits of the causes of action alleged by the plaintiff because the court determined only that the causes of action alleged, which sounded in breach of contract and unjust enrichment, were barred as a matter of law by the applicable statute of limitations or brought against the wrong party. There is no basis for interpreting that judgment as a ruling regarding the underlying merits of the plaintiff's allegations or whether it would have been entitled to damages had it brought its action sooner and against the correct party. See *Collum* v. *Chapin*, 40 Conn. App. 449, 451, 671 A.2d 1329 (1996) (noting that "the only facts material to the trial court's decision on a motion for summary judgment [on statute of limitations grounds] are the date of the wrongful conduct alleged in the complaint and the date the action was filed" (internal quotation marks omitted)). Moreover, because the lien existed *prior to* the court's summary judgment ruling and was the result of an unpaid and unchallenged sewer benefit assessment obtained in a parallel administrative proceeding, it could not undermine the court's judgment that the civil action could not proceed.

We similarly are unpersuaded that § 49-51 provided the court with statutory authority to consider a request to discharge the lien as a part of the underlying action. Even if it is assumed, however, that it did, the court improperly exercised that authority under the circumstances presented.

"Section 49-51 permits any person having an interest in any real estate described in any certificate of lien which lien is invalid but not discharged of record to give notice to the lienor to discharge the lien and, if such request is not complied with in thirty days, to bring his complaint to the court which would have jurisdiction of the foreclosure of such lien, if valid, claiming such discharge. That court may adjudge the validity or invalidity of the lien, and a certified copy of a judgment of invalidity recorded on the land records shall fully discharge it." (Internal quotation marks omitted.) *Woronecki* v. *Trappe*, 228 Conn. 574, 579–80, 637 A.2d 783 (1994).

"[T]he discharge of a lien is a statutory proceeding . . . . The statute confers a definite jurisdiction upon a judge and it defines the conditions under which such relief may be given . . . . In such a situation jurisdic-

tion is only acquired if the essential conditions prescribed by [the] statute are met. If they are not met, the lack of jurisdiction is over the subject-matter and not over the parties. . . . The essential condition of an action under . . . § 49-51 is written notice to the lienor sent to him at his last-known address by registered mail or by certified mail, postage prepaid, return receipt requested, to discharge the lien in the office where recorded." (Citation omitted; emphasis omitted; internal quotation marks omitted.) *Guilford Yacht Club Assn., Inc.* v. *Northeast Dredging, Inc.*, 192 Conn. 10, 13, 468 A.2d 1235 (1984). The party moving to discharge a lien pursuant to § 49-51 has "the burden of proving compliance with the statutory notice requirement," and the court must make factual findings that such requirements have been met. *Woronecki* v. *Trappe*, supra, 228 Conn. 580.

In the present case, the court cited to § 49-51, noting by way of a parenthetical that it authorized a court to discharge a lien. It also included the text of the statute in a footnote. The court, however, provided no legal analysis and failed to make the necessary findings regarding whether the defendant had complied with all necessary statutory notice requirements. These deficiencies alone are enough to reject the court's reliance on § 49-51 as a source of authority for ordering the discharge of the lien in the present case. Even if we were to overlook these problems, § 49-51 only provides the court with the authority to discharge a lien that "is invalid but not discharged of record . . . ." As we have already explained, the court made no finding that the lien, which was the result of an unpaid and unchallenged sewer benefit assessment, was legally invalid. Like in *Mangiafico*, nothing in the court's decision suggested that the lien was jurisdictionally defective, not in proper form, or not duly recorded. See *Mangiafico* v. *Farmington*, supra, 173 Conn. App. 175. Accordingly, even if we assume that the court had the authority to consider whether to discharge the sewer benefit assessment lien pursuant to § 49-51, the court abused its discretion by doing so without making the required findings regarding the validity of the lien.

Finally, we find no merit in the defendant's suggestion that either res judicata or judicial estoppel provides an alternative basis on which to affirm the judgment of the court. These arguments warrant little discussion. The defendant appears to argue in its brief that the court's summary judgment ruling, which has not been challenged on appeal, will remain valid even if the plaintiff is successful in overturning the court's discharge of the lien. As a result, the defendant contends that, on the basis of the summary judgment, it would be able to assert res judicata as a defense in any future action to foreclose the assessment lien. The defendant contends that this potential scenario renders the present appeal "a further waste of judicial resources . . . ." We find

no merit in this argument because it relies on speculation over future proceedings and the erroneous premise that the court's summary judgment decision, which was rendered on statute of limitations grounds and the failure to sue the correct party, has any legal bearing on a future determination regarding the validity of the sewer assessment lien.

Although the defendant mentioned res judicata in its postjudgment motion to the trial court as a possible basis for ordering the discharge of the lien, the court, understandably, did not rely on res judicata as a basis for its ruling. As succinctly explained by the plaintiff in its brief, res judicata, if applicable, "operates to foreclose *future* litigation and bars *subsequent* action on a claim after a judgment on the merits. . . . The law of res judicata does not retroactively bar *prior* adjudications that became final *before* the entry of final judgment." (Citations omitted; emphasis in original; internal quotation marks omitted.) Stated differently, res judicata cannot be invoked as justifying the retroactive invalidation of a sewer benefit assessment and lien that were final before the judgment purportedly entitled to preclusive effect was rendered.

The defendant's additional argument, that the plaintiff should be judicially estopped from arguing on appeal that the court lacked continuing jurisdiction to order the discharge of the lien, is likewise meritless. The sole basis for the judicial estoppel argument is that the plaintiff cited in its opposition to the defendant's postjudgment motion boilerplate language acknowledging that motions for contempt implicate a court's "inherent equitable authority to effectuate and vindicate its judgments." The plaintiff went on to argue, however, as it does on appeal, that this authority provided no basis for discharging the lien under the present circumstances. Accordingly, we reject the defendant's argument that the plaintiff is somehow attempting to take a contrary position on appeal.

We conclude that the court acted in excess of its authority and abused its discretion by ordering a discharge of the sewer assessment lien. Thus, that portion of its ruling on the defendant's motion for contempt and application for discharge cannot stand.

The judgment is reversed and the case is remanded with direction to deny the defendant's motion for contempt and application for discharge in its entirety.

In this opinion the other judges concurred.

[1] The state of Connecticut also was named as a defendant in this action on the basis of an agreement between the plaintiff and the state regarding the construction of new sewer infrastructure. All counts against it were dismissed on sovereign immunity grounds, however, because there was no applicable statutory waiver of immunity nor had the plaintiff sought and received permission to sue the state from the Claims Commissioner. Accordingly, we refer to Marriott International, Inc., as the defendant in this opinion.

We further note that the case caption in the trial court reflects that the plaintiff initiated this action against the defendant "doing business as" the

Marriott Hartford Downtown. That designation, however, appears to be a misnomer, as reflected in unchallenged findings of the trial court, discussed in more detail later in this opinion.

[2] General Statutes § 7-249 provides in relevant part: "At any time after a municipality, by its water pollution control authority, has acquired or constructed, a sewerage system or portion thereof, the water pollution control authority may levy benefit assessments upon the lands and buildings in the municipality which, in its judgment, are especially benefited thereby, whether they abut on such sewerage system or not, and upon the owners of such land and buildings, according to such rule as the water pollution control authority adopts, subject to the right of appeal as hereinafter provided. . . ."

[3] General Statutes § 7-254 (b) provides in relevant part: "Any unpaid [sewer benefit] assessment and any interest due thereon shall constitute a lien upon the real estate against which the assessment was levied from the date of such levy. Each such lien may be continued, recorded and released in the manner provided by the general statutes for continuing, recording and releasing property tax liens. . . ."

[4] General Statutes § 7-250 (a) provides in relevant part: "When the water pollution control authority has determined the amount of the assessment to be levied, it shall file a copy thereof in the office of the clerk of the municipality. Not later than five days after such filing, it shall cause a copy of such assessment to be published in a newspaper having a general circulation in the municipality, and it shall mail a copy of such assessment to the owner of any property to be affected thereby at such owner's address as shown in the last-completed grand list of the municipality or at any later address of which the water pollution control authority may have knowledge. Such publication and mailing shall state the date on which such assessment was filed and that any appeals from such assessment must be taken within twenty-one days after such filing. Except as provided in subsection (b) of this section, any person aggrieved by any assessment may appeal to the superior court for the judicial district wherein the property is located and shall bring any such appeal to a return day of said court not less than twelve nor more than thirty days after service thereof . . . ."

[5] General Statutes § 49-51 (a) provides in relevant part: "Any person having an interest in any real or personal property described in any certificate of lien, which lien is invalid but not discharged of record, may give written notice to the lienor . . . to discharge the lien. Upon receipt of such notice, the lienor shall discharge the lien by sending a release sufficient under section 52-380d . . . to the person requesting the discharge. If the lien is not discharged within thirty days of the notice, that person may apply to the Superior Court for such a discharge, and the court may adjudge the validity or invalidity of the lien and may award the plaintiff damages for the failure of the defendant to make discharge upon request. . . ."

[6] Although it appears from the record that no entity associated with the Marriott Hartford Downtown ever paid the plaintiff any sewer connection or construction charges, there is undisputed summary judgment evidence that the hotel routinely has paid all sewer *use* charges billed to it by the plaintiff since 2005, in direct contradiction to allegations in the plaintiff's complaint. See footnote 7 of this opinion.

[7] The trial court, in its memorandum of decision granting the defendant's motion for summary judgment, accurately characterizes the plaintiff's complaint as suffering from a lack of clarity. We agree with the court's assessment that the complaint "is riddled with vagueness and contradictions" and "is unclear about the identity of the contracting parties, the nature of the alleged breach of contract, and the date when it supposedly occurred."

[8] As indicated in footnote 1 of this opinion, the court granted the state's motion and dismissed all counts against it on September 24, 2020. Although the plaintiff initially appealed from the judgment of dismissal, it subsequently withdrew that appeal.

[9] In addition to the statute of limitations defense, the defendant asserted, inter alia, that the complaint failed to state a claim on which relief could be granted, the complaint failed to allege the existence of any contractual relationship between the plaintiff and the defendant, and a different party was responsible in whole or in part for the payment of any alleged sewer use charges owed to the plaintiff.

[10] The plaintiff identified the following parties in its notice of public hearing: Earth Technology, Inc.; Adriaen's Landing Hotel, LLC; HT-Adriaen's Landing Hotel TRS, LLC; Waterford Development, LLC; Capital Region Development Authority, formerly known as Capital City Economic Development

Authority; and Marriott International, Inc., doing business as Hartford Marriott Downtown.

The record before us does not clearly reflect who owns the Marriott Hotel Downtown property, although any ambiguity regarding the ownership and management of the hotel does not affect our resolution of the claim before us. According to undisputed affidavits filed in support of summary judgment and other pleadings, the Marriott Hartford Downtown property "is directly owned by the company Adriaen's Landing Hotel, LLC. [Adriaen's Landing Hotel, LLC's] operations . . . are owned by HT-Adriaen's Landing Hotel TRS, LLC." In addition, "Waterford Hotel Group is [an] umbrella management company for a number of hotels . . . including the Marriott Hartford Downtown . . . through several wholly-owned subsidiaries, including Waterford Venue Services Hartford, LLC . . . ." Waterford Hotel Group "operates the Marriott Hartford [Downtown] as a franchisee of the Marriott International brand. . . . [The defendant] does not have a commercial interest in the Marriott Hartford [Downtown] other than the license fee it receives as a franchisor."

[11] This amount included the $312,885 assessment plus filing fees.

[12] Whether the court improperly applied the statute of limitations applicable to breach of contract actions to the unjust enrichment count in rendering summary judgment for the defendant; see *Reclaimant Corp.* v. *Deutsch*, 332 Conn. 590, 613, 211 A.3d 976 (2019); is not an issue before us in the present appeal.

[13] The court stated that it was declining the defendant's request for a finding of contempt "[b]ecause the court does not have evidence concerning the wilfulness or bad faith of [the plaintiff] in imposing the assessment and filing the lien . . . ." The defendant does not challenge this aspect of the court's ruling on appeal.

[14] Although, "even in the absence of a finding of contempt, a trial court has broad discretion to make whole any party who has suffered as a result of another party's failure to comply with a court order"; *O'Brien* v. *O'Brien*, 326 Conn. 81, 99, 161 A.3d 1236 (2017); it is clear from the court's decision that it was not invoking this remedial authority as a basis for its order discharging the lien.

[15] The benefit referred to in § 7-249 is an increase in the market value of the property as a consequence of the sewer. See *Shoreline Care Ltd. Partnership* v. *North Branford*, 231 Conn. 344, 351, 650 A.2d 142 (1994). "[A] property need not be connected to the system in order for it to receive a benefit. If the property has increased in market value merely by virtue of its access to town sewers, it has received a benefit for which an assessment may be levied." Id., 351–52.

[16] The court indicated that the plaintiff had never given the court notice that it had instituted a parallel benefit assessment proceeding and that this left the court unable to "consolidate the two cases or at least make an informed decision as to the order in which they should proceed." The court failed to recognize that the defendant also failed to notify the court of the assessment proceeding. Furthermore, there were never two actions to consolidate. The assessment proceeding is an administrative proceeding conducted by and before the plaintiff, not the Superior Court, and, thus, it is unclear how it could have been consolidated with the civil action even if the court had notice of it. Perhaps an appeal taken from the assessment could have been consolidated, but, as we have explained, no such appeal was ever filed. Although we are sympathetic to the extent that the court was concerned with preserving judicial resources, we agree with the plaintiff that the defendant was in as good a position to avoid a waste of judicial resources as the plaintiff, and, in any event, the court's "concerns about potential wasted resources provide no justification for the end run around § 7-250 . . . ."